Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5580 | **DATE** | 09/04/2001 |
| **CASE TITLE** | Van Slee et al. v. Don McCue Chevrolet Geo, Inc. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiffs' Motions for Class Certification

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the Court the Court DENIES WITHOUT PREJUDICE the Plaintiffs' motion for class certification [#6].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP - 7 2001 | |
| | Notified counsel by telephone. | date docketed | 101 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| mrl | courtroom deputy's initials | FILED FOR DOCKETING 01 SEP -7 PM 2: 49 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

David Van Slee and Kathy Van Slee,

Plaintiffs,

v.

Don McCue Chevrolet Geo, Inc. and
General Motors Acceptance Corporation,

Defendants,

No. 00 C 5580

The Hon. David H. Coar

**DOCKETED**
**SEP - 7 2001**

### MEMORANDUM OPINION AND ORDER

David and Kathy Van Slee bought a van from Don McCue Chevrolet Geo. Instead of paying cash, the Van Slees agreed to pay the cost of the van, less the value of the van that they traded in, over time. For the privilege of delayed payment, the Van Slees agreed to pay a finance charge. At some point, the Van Slees apparently became dissatisfied with the deal that they got from Don McCue and sued it for violating, among other things, the federal Truth In Lending Act. They sue on their own behalf and on behalf of a purported class of similarly situated individuals on all claims initially, but at this stage of litigation only with respect to the TILA claim. The Van Slee's moved to certify a class of plaintiffs for their TILA claim.[1] For the reasons stated below, the Court DENIES WITHOUT PREJUDICE the Van Slees' motion for class certification.

### Background

On June 2, 2000, David and Kathy Van Slee bought a Chevrolet Van from Don McCue. In negotiating the payment details, Don McCue offered the Van Slees $1,000 off of the regular price if they would pay cash. Alternatively, if the buyers decided to make payments over time, Don McCue offered to arrange financing with a promotional annual percentage rate of interest. The Van

---

[1] Don McCue also moved to dismiss the TILA claim, but the Court addresses that motion in a separate opinion.



Slees picked option number two, the financing plan. The Van Slees traded in their 1994 van and agreed to pay the balance over time. To memorialize their agreement, the Van Slees and Don McCue entered a retail installment contract.

After finalizing the paperwork with Don McCue, the Van Slees set off on a vacation using the van as their transportation. They returned to find out that the financing arrangement that they agreed to had "not gone through." Don McCue told the Van Slees that they needed to pay an additional $1,000 to complete the sale. The Van Slees balked at this suggestion and asked for the trade-in back. Ultimately, the parties agreed that the Van Slees would forego about $1,000 in optional equipment that had yet to be installed on their new van. The parties executed another retail installment contract on June 28, 2000. The Van Slees say that Don McCue should have disclosed the rebate that they didn't get as part of the finance charge and that their failure to do so violated TILA. They seek to represent a class of people who: (a) entered into a credit transaction with Don McCue to purchase a vehicle in which Don McCue provided TILA disclosures; (b) received a promotional annual percentage rate; (c) forewent a rebate to receive the promotional APR; (d) since September 11, 1999.

**Analysis**

Subsection A of Rule 23 of the Federal Rules of Civil Procedure provides four standards that must be met before a court will certify a class. See Fed. R. Civ. P. 23(a). These are referred to in shorthand as: (1) numerosity; (2) commonality;(3) typicality; (4) adequacy. See In re Bank One Shareholders Class Actions, 96 F. Sup. 2d 780, 782 (N.D. Ill. 2000). If the plaintiffs fail to satisfy even one of the requirements of Rule 23, a class will not be certified. See Retired Chicago Police Assoc. v. City of Chicago, 7 F.3d 584, 596 (7th Cir.1993) (citing Harriston v. Chicago Tribune Co., 992 F.2d 697, 703 (7th Cir.1993)); see also Marcial v. Coronet Ins. Co., 122 F.R.D. 529, 531 (N.D.

Ill. 1988), aff'd 880 F.2d 954 (7th Cir.1989) ("Failure to satisfy the numerosity requirement is, alone, a sufficient ground for denying class certification.") In addition, the proposed class must satisfy one of the elements outlined in Rule 23(b). See Alliance to End Repression v. Rochford, 565 F.2d 975, 977 (7th Cir.1977). In this case, the Van Slees seek to represent a class characterized by the requirements of Rule 23(b)(3) (a "B-3 Class"). Here, the Court finds that the numerosity issue is dispositive and consequently only addresses that element.

To sue as a representative of a class, Rule 23 specifically requires that its members are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). This is often referred to as "numerosity." See, e.g., Keele v. Wexler, 149 F.3d 589 (7th Cir. 1998). The touchstone of the "numerosity" requirement, despite its shorthand name, is impracticality of joinder, not the size of the class.[2] Several factors, including class size, underlie the impracticality inquiry. Generally, factors to be considered include geographic diversity of the proposed class members, Gaspar v. Linvatec, 167 F.R.D. 51, 57 (N.D. Ill. 1996), "the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." Fry v. UAL Corp., 136 F.R.D. 626, 630 (N.D. Ill. 1991). Nevertheless, size is important. See, e.g., Walco Investments. v. Thenen, 168 F.R.D. 315, 324 (S.D. Fla. 1996). Courts generally don't rely on factors other than size when the proposed class is small. See Ladegaard v. Hard Rock Concrete Cutters, Inc., No. 00 C 5755, 2000 WL 1774091, at *3 (N.D. Ill. Dec. 1, 2000) (citations omitted).

The plaintiff bears the burden of showing class size and impracticability of joinder. While estimates of class size do not need to be exact, see Vergara v. Hampton, 581 1281, 1284 (7th Cir. 1978) (citations omitted), they also may not be purely speculative. See Kohn v. Mucia, 776 F. Supp.

---

[2] Impracticability, though, does not mean impossibility. See Herbert B. Newberg, Alba Conte, 1 Newberg on Class Actions § 3.03, p. 3-11 (citing cases) (3d ed.1992).

3

348, 352 (N.D. Ill. 1991) (citing Marcial, 880 F.2d at 954). To aid in determining class size, courts often rely on "common sense" in the absence of concrete proof of numerosity. See, e.g., National Organization for Women, Inc. v. Scheidler, 172 F.R.D. 351, 359 (N.D. Ill. 1987).

The Van Slees have not identified with much precision how many people make up the class that they seek to represent. To determine class size, they examined forty files that Don McCue produced during discovery. Those forty were but a fraction of the total files that Don McCue had for the class period.[3] Of those forty files, seven indicated that GMAC was the entity providing financing for the cars. According to the Van Slees, these files can be cross referenced with other documents that GMAC or Don McCue possesses to determine whether a particular customer was offered a cash rebate. The Van Slees extrapolate from this sample and conclude that there are roughly 300 members of their class. It is not at all clear, however, that their extrapolation is based on sound assumptions.

The Van Slees' estimate of the class size assumes that the people whose files reflect a GMAC financing arrangement, also received a rebate offer similar to theirs. There are at least two problems with this assumption. First, the cross-referencing document shows that GMAC did not offer a cash rebate for one third or more of the vehicles listed. Thus the number that the Van Slees use could be reduced by at least a third assuming that each vehicle sold in identical proportions and even more if the most popular selling vehicles did not have rebates.[4] Second, according to Don McCue, the offers shown in the cross-referencing document only applied for a limited period of time. The Van Slees have not disputed this. If these offers only encompassed a fraction of the class period, their

---

   [3]   For unexplained reasons, the sample set included files covering a four-year period whereas the class only covers a one-year period.

   [4]   The opposite could also be true. Namely, the least-popular vehicles could be the ones for which GMAC offers no rebate. On this record, though, it is impossible to tell.

4

estimate could be greatly exaggerated.[5] This could be a significant reduction to the Van Slees' estimate because the sample draws files from a four-year period while their class period only extends one year.

In sum, while there is some evidence that the class might be substantially large, the proof relies heavily on assumptions that may or may not be true. And, these transactions do not easily lend themselves to confirmation based on conventional wisdom or "common sense." The Court is reluctant, at this point, to certify a class when the number of *potential* class members remains fairly speculative. This is especially so when the potential class members are likely all from a discrete geographical area, making joinder off all interested parties less onerous. If the class members are as easily identified as the Van Slees suggest, further discovery ought to support or undermine their numerosity argument more precisely.

## Conclusion

For the reasons stated in this memorandum opinion and order, the Court DENIES WITHOUT PREJUDICE the plaintiffs' motion for class certification.

Enter:

_David H. Coar_
David H. Coar
United States District Judge

Dated: SEP 4 - 2001

---

[5] Again, this is not necessarily true. The promotional rebates and financing arrangements could have spanned the entire class period. These documents simply do not indicate one way or another.