# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5580 | **DATE** | 8/31/2001 |
| **CASE TITLE** | Van Slee et al. v. Don McCue Chevrolet Geo, Inc. et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motions to Dismiss

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the Court the Court DENIES Don McCue's motion to dismiss [#36] Count I (TILA) and GRANTS both Don McCue's and GMAC's motions to dismiss [#37] Count II (Odometer Acts).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | 102 |
| | Notified counsel by telephone. | | SEP 10 2001 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mrl | courtroom deputy's initials | FILED FOR DOCKETING 01 SEP 10 AM 11: 06 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

David Van Slee and Kathy Van Slee,

Plaintiffs,

v.

Don McCue Chevrolet Geo, Inc. and
General Motors Acceptance Corporation,

Defendants,

No. 00 C 5580

The Hon. David H. Coar

**DOCKETED**

SEP 1 0 2001

MEMORANDUM OPINION AND ORDER

David and Kathy Van Slee bought a van from Don McCue Chevrolet Geo. Instead of paying

cash, the Van Slees agreed to pay the cost of the van, less the value of their old van that they traded

in, in installments over time. For the privilege of delayed payment, the Van Slees agreed to pay a

finance charge. At some point, the Van Slees apparently became dissatisfied with the deal that they

got from Don McCue and sued it for violating, among other things, the federal Truth In Lending Act.

They sue on their own behalf and on behalf of a purported class of similarly situated individuals on

all claims initially, but at this stage of litigation only with respect to the TILA claim. This Court

addresses the propriety of bringing this claim as a class action in a separate opinion. They also sued

under both federal and state odometer acts for Don McCue's odometer disclosures connected with

the sale. Both Don McCue and General Motors Acceptance Corporation moved to dismiss the TILA

and odometer act claims. For the reasons stated below, the Court GRANTS IN PART and DENIES

IN PART Don McCue's motion to dismiss and GRANTS GMAC's motion to dismiss.

## Background

On June 2, 2000, David and Kathy Van Slee bought a Chevrolet Van from Don McCue

Chevrolet. In negotiating the payment details, Don McCue offered the Van Slees $1,000 off of the

regular price if they would pay cash. Alternatively, if the buyers decided to make payments over



time, Don McCue offered to arrange financing with a promotional annual percentage rate of interest. The Van Slees picked option number two, the financing plan. The Van Slees traded in their 1994 van and agreed to pay the balance over time. To memorialize their agreement, the Van Slees and Don McCue entered a retail installment contract. At about the same time, Don McCue also issued an odometer statement, which reflected the actual mileage on the van – 171 miles.

After finalizing the paperwork with Don McCue, the Van Slees set off on a vacation using the van as their transportation. All told, the Van Slees logged roughly 3,000 miles on their vacation. They returned to find out that the financing arrangement that they agreed to had "not gone through." Don McCue told the Van Slees that they needed to pay an additional $1,000 to complete the sale. The Van Slees balked at this suggestion and asked for their '94 van back. Ultimately, the parties agreed that the Van Slees would forego about $1,000 in optional equipment that had yet to be installed on their new van. The parties executed another retail installment contract on June 28, 2000. Don McCue also issued another odometer statement, which again reflected the June 2, 2000, mileage of 171 miles. According to the complaint, Don McCue knew that the Van Slees had driven the van and that their were substantially more than 171 miles on it. After executing the retail installment contract, Don McCue assigned it to GMAC.

## Analysis

A claim should be dismissed under Rule 12(b)(6) only "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45 (1957) (citations omitted). The plaintiff gets the benefit of the doubt with ambiguities and inferences. Also, the Court treats well-pleaded facts as true for purposes of the motion. See, e.g., Chu v. Sabratek Corp., 100 F. Supp. 2d 815 (N.D. Ill. 2000).

Truth In Lending Act

Congress enacted TILA "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit practices." 15 U.S.C. § 1601(a). "TILA requires creditors to disclose clearly and accurately to consumers any finance charge that the consumer will bear under the credit transaction. These stringent disclosure requirements are designed to prevent creditors from circumventing TILA's objectives by burying the cost of credit in the price of the goods sold." Walker v. Wallace Auto Sales, Inc., 155 F.3d 927, 930 (7th Cir. 1998) (citation omitted).

The disclosure provisions of TILA, which apply to transactions like the one involved here require Don McCue to disclose, among other things: (a) the "amount financed;" and (b) the "finance charge." See 15 U.S.C. § 1638. A finance charge includes "all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605. In general, even "[d]iscounts for the purpose of inducing payment by a means other than the use of credit" are part of a finance charge. See 12 C.F.R. § 226.4(b)(9).[1]

Don McCue does not dispute that the $1,000 that it allegedly charged credit customers would satisfy the general definition of a finance charge. It says that the $1,000 rebate falls within an exception that Section 167(b) of TILA and 12 C.F.R. § 226.4(c)(8), create. If the conditions of Section 167(b) are met, cash discounts are not finance charges. See 12 C.F.R. § 226.4(c)(8); see also

---

[1]     Congress "delegated expansive authority to the Federal Reserve Board to elaborate and expand the legal framework governing commerce and credit." Ford Motor Credit v. Mihollin, 444 U.S. 555, 559-60 (1980). The Federal Reserve Board's interpretation of TILA and the regulations is binding unless it is "demonstrably irrational." Id. at 565.

3

12 C.F.R. § 226 Supp. I, Comment to 226.4(b) ("charges or fees shown as examples of finance charges in § 226.4(b) may be excludable under § 226.4(c), (d), or (e)" so long as the conditions set forth in those sections are met). Don McCue says that its cash rebate program meets all the requirements of Section 167b and that the Van Slees have not plead otherwise. The Van Slees, though, say that Section 167 is limited to transactions involving credit cards or other open-end credit.

Section 167b is titled "Inducement to cardholders by sellers of cash discounts for payments by cash, check or similar means; credit card surcharge prohibition; finance charge for sales transactions involving cash discounts." 15 U.S.C. § 166f. The text of Section 167 says:

(a) Cash discounts

> With respect to any sales transaction, any discount from the regular price offered by the seller for the purpose of inducing payment by cash, checks, or other means not involving the use of an open-end credit plan or a credit card shall not constitute a finance charge as determined under section 1605 of this title if such discount is offered to all prospective buyers and its availability is disclosed clearly and conspicuously.

(b) Finance charge

> With respect to any sales transaction, any discount from the regular price offered by the seller for the purpose of inducing payment by cash, checks or other means not involving the use of an open-end credit plan or a credit card shall not constitute a finance charge as determined under section 1605 of this title if such discount is offered to all prospective buyers and its availability is disclosed clearly and conspicuously.

Id.

Don McCue's interpretation of Section 167 relies on the broad language of subsection b – "any sales transaction" – for its position that properly-disclosed and universally-offered cash discounts are not finance charges. Specifically, it says that the term "any" does not contemplate a limit on the type of sales transaction involved. Beyond what it terms the "plain language" of Section 167(b), it also says that certain regulations, see 12 C.F.R. § 226.4(c)(8), commentaries to regulations,

4

see 12 C.F.R. § 226 Supp. I, Comment to 226.18, and the legislative history, see S. Rep. No. 97-23 (1981), reprinted in, 1981 U.S.C.C.A.N. 74, support its argument that the rebate offered to the Van Slees is not part of the finance charge.

The Van Slees, on the other hand, say that both the title and certain portions of the text of Section 167 supports their position. According to them, two things show that Congress intended to limit Section 167 to transactions involving credit cards. First, the title refers to "cardholders," which TILA defines as "any person to whom a credit card is issued or any person who has agreed with the card issuer to pay obligations arising from the issuance of a credit card to another person." 15 U.S.C. § 1602(m). Second, subsection b describes the types of payments to be induced – "cash, checks or other means not involving the use of an open-end credit plan or a credit card." According to the Van Slees, this contrast strongly suggests that the section is limited because the type of payment induced are anything but open-end credit transactions.

The arguments that each of the parties have presented are not without merit. Without any other guidance, deciding between the two would be a difficult task. Added to the mix, though, is a Federal Reserve Board commentary, which neither party cited. It says that the cash-discount exception upon which Don McCue relies, is limited to transactions involving credit cards. See 12 C.F.R. § 226 Supp. I, Official Comment to 226.4 ("[t]his provision applies only to transactions involving an open-end credit plan or a credit card."). This Court cannot say that the Federal Reserve Board's interpretation of the cash-discount provision is demonstrably irrational. Consequently, it ought to be credited. While it is unclear why Congress might have intended to limit the finance-charge exception to cash discounts involving credit card transactions, the Federal Reserve Board's interpretation is a reasonable one. Consequently, the finance-charge exception for cash discounts does not apply in this case and Don McCue's motion to dismiss is DENIED.

## Federal and State Odometer Acts

In Count II of their complaint, the Van Slees allege that both Don McCue and GMAC violated the federal and Illinois odometer fraud statutes (collectively "the Odometer Acts"). The Odometer Acts provide parallel causes of action. See Ray Kim Ford v. Daoud, 750 F. Supp. 327 (N.D. Ill. 1990). "The Illinois statute is patterned after the [federal act], and liability for violation of this statute is to be found in the same manner as for the Federal statute." Buechin v. Ogden Chrysler-Plymouth, Inc., 511 N.E. 2d 1330, 1339 (Ill. Ct. App. 2d Dist. 1987). Both statutes create a remedy for purchasers who are victims of odometer fraud. See 49 U.S.C. 32710 ("A person that violates this chapter or a regulation prescribed or order issued under this chapter, with intent to defraud, is liable for [damages.]"); 625 ILCS 5/3-112.1(e) ("any person who, with intent to defraud, violates any requirement imposed under this Section shall be liable [for damages]").

The purpose of the Odometer Acts' disclosure requirements is to assist car buyers "in determining a vehicle's condition and value by making the disclosure of a vehicle's mileage a condition of title." 49 C.F.R. § 580.2 (1995). The Odometer Acts require a person transferring ownership of an automobile to disclose the actual mileage on the vehicle or to say that the actual mileage is unknown. See 49 U.S.C. 32705(a); 625 ILCS 5/3-112.1(b). The mileage disclosed must be the actual mileage that the vehicle has traveled, see, e.g., 49 C.F.R. § 580.3, when the title is transferred. 49 C.F.R. § 580.5(c)(1); 625 ILCS 5/3-112.1(b)(1).

The Van Slees say that Don McCue violated the Odometer Acts when it certified the June 2 mileage on June 28, even though they knew that was no longer the true mileage. The Court disagrees. The Van Slees acknowledge that when Don McCue sold the Chevy Van to them, it disclosed the actual mileage. When Don McCue made that disclosure, ownership transferred to the Van Slees. When Don McCue and the Van Slees entered another agreement to adjust the terms of

6

the financing, the disclosure statement again reflected the mileage as of June 2. Ownership of the van, however, had already transferred and the June 28 disclosure simply restated the mileage as of June 2. Under these circumstances, the allegations do not support the conclusion that Don McCue violated the Odometer Acts. Its motion to dismiss is therefore granted.[2] Because the Van Slees have not stated a claim against Don McCue, it follows that they have not stated a claim against GMAC, which the Van Slees allege is only vicariously liable.

## Conclusion

For the reasons stated in this memorandum opinion and order, the Court DENIES Don McCue's motion to dismiss Count I (TILA) and GRANTS both Don McCue's and GMAC's motions to dismiss Count II (Odometer Acts).

Enter:

David H. Coar
United States District Judge

Dated: AUG 3 1 2001

---

[2]   The Van Slees argue that liability should attach because they "must account for [the alleged odometer fraud] when they sell the van, impairing its value to them." Pl. Resp. at 9. Nonsense! The Van Slees acknowledge that the van had 171 miles on it when they bought it. They have not alleged that the odometer inaccurately records the miles driven. Thus, if and when they transfer the van, they will know and be able to report the van's accurate mileage. It is simply untenable that the facts that they have alleged will have absolutely any impact on the value of their van. For the same reason, the Court rejects the suggestion that liability should attach to "create a paper trail of the odometer reading at each transfer [to] facilitat[e] investigation of odometer fraud." Id.

7